* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer/employee relationship existed between the Employer-Defendant and plaintiff on June 10, 1994.
3. Plaintiff was injured by a fall at work on June 10, 1994.
4. At the time of the injury by accident, the Employer-Defendant was a duly-qualified, self-insured employer with Key Risk Management Services serving as its Administering Agent.
5. The average weekly wage of Plaintiff was two hundred thirteen and 15/100 dollars ($213.15).
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on September 17, 1934. While working for defendant-employer, plaintiff suffered injuries to her back, neck, and head in a fall on June 10, 1994.
2. Following a hearing on September 19, 1996, former Deputy Commissioner William Bost issued an Opinion and Award on April 30, 1997, holding these injuries compensable and plaintiff's depression causally related to the compensable injuries. The Opinion awarded plaintiff ongoing temporary total disability benefits at the rate of $141.96 per week, past and future medical treatment, including past and future treatment by Dr. Campbell, and directed entry into a comprehensive treatment program that would address plaintiff's chronic pain and depression.
3. On April 4, 1998, plaintiff did see Dr. Walter S. Davis in Winston-Salem, North Carolina for a quantitative interdisciplinary program evaluation. This evaluation was authorized by defendants. However, due to plaintiff's non-work related hypertension, Dr. Davis would not allow plaintiff to participate in formal rehabilitation until she had been cleared by her family doctor. At that time, plaintiff was continuing her treatment at Valdese General; however, she was subsequently discharged for missing appointments.
4. An appointment was set up with Dr. Davis again in April of 1999, but plaintiff's counsel instructed her not to attend without further discussing this matter with defendants or Dr. Davis. An appointment was set up for May of 1999, but, again, plaintiff's counsel instructed her not to attend. A letter was then sent to plaintiff's counsel informing him that his client would not be in danger at the appointment, as the appointment was just an initial evaluation. However, he informed defendant that his client was not attending, and plaintiff did not attend the appointment.
5. There was no correspondence between the parties in 2000. In 2001 correspondence was sent to plaintiff's counsel inquiring about plaintiff's blood pressure. However, rather than responding to the inquiry regarding plaintiff's current blood pressure status, plaintiff's counsel responded by sending a list of medical providers that he wanted authorized. Following that request, the record reflects no immediate response by defendants and no correspondence or request from plaintiff in the remainder of 2001, all of 2002, and the first half of 2003.
6. In July of 2003, correspondence was sent to plaintiff's counsel inquiring about plaintiff's health status. Plaintiff's counsel again sent a list of physicians that he wanted to see plaintiff. Plaintiff's specific requests were denied, but plaintiff was authorized to see Dr. Stephen David. However, after reviewing plaintiff's records, Dr. David chose not to see plaintiff.
7. Subsequently, plaintiff missed another appointment set up for her with Dr. Carlton's rehab program in Charlotte, in the summer of 2004, even though transportation, an indicated concern of plaintiff's, was provided.
8. In both her Initial Report dated May 21, 2004, and her progress report dated July 26, 2004, Ms. Clouse, a nurse case manager with the Industrial Commission, recommended that defendants authorize a psychiatric evaluation for Ms. Warren with either Dr. Kallenbach in Rutherfordton; or Dr. Leetz or Dr. Dray in Asheville. However, defendants never authorized a psychiatric visit for plaintiff.
9. There is no evidence that defendants ever authorized any treatment for plaintiff's depression or other pain management. Rather, the only treatment for depression and pain management that plaintiff received was provided by Dr. Benjamin Garrou, her family physician, who treated plaintiff's depression and chronic pain with prescription medications. It is noted that plaintiff was treated by Dr. Garrou only three times in 1999, one time in 2000, two times in 2001, one time in 2003, two times in 2003 and that the records reflect she most often sought treatment for unrelated respiratory, sinus or abdominal pain. Defendants have authorized payment of the cost of any of plaintiff's treatment arising from the June 10, 1994 fall that was provided by Dr. Garrou.
10. In late April, 2004, counsel for plaintiff filed a motion with the Industrial Commission seeking an order to show cause why defendants should not be held in contempt of the Opinion and Award of April 30, 1997, with regard to issues surrounding plaintiff's medical treatment.
11. On August 2, 2004, Chief Deputy Commissioner Stephen T. Gheen filed an Order directing plaintiff's Motion to Show Cause to be treated as a Motion to Authorize Medical Treatment and that a full hearing be conducted. The order also directed the assigned Deputy Commissioner to consider whether reasonable attorney fees should be assessed under N.C. Gen. Stat. § 97-88.1.
12. During the seven and one-half year period from the filing of the Opinion and Award until December, 2004 there is no evidence that defendants ever authorized or expended any funds toward the purchase of plaintiff's prescription medications.
13. At the hearing before the deputy commissioner, plaintiff testified that she wanted additional treatment, but she was unsure of whether she would be able to attend if it was provided. She testified that her biggest concern was transportation, but she acknowledged missing an appointment set up in Charlotte even though transportation was offered.
14. Defendants cite Ms. Warren's high blood pressure in support of the lack of treatment that was provided to her during the seven and one-half year period following April 30, 1997. However, plaintiff's high blood pressure would not have prevented her from going to a neurologist, psychologist, or orthopedic doctor.
15. Since the Opinion and Award of the Deputy Commissioner, defendants have failed to pay any of the medical bills incurred by Mrs. Warren, except for the $49.43 bill from Wake Forest University Physicians. Instead Ms. Warren was forced to pay her own medical bills for the limited treatment she did receive, either with her own funds or to rely on Medicare.
16. Plaintiff died in December of 2004.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Due to plaintiff's death, the issue of further medical treatment is moot.
2. On the other hand, the history of plaintiff's treatment after April 30, 1997, is relevant on the issues of payment for treatment and the granting or denial of attorney fees under N.C. Gen. Stat. § 97-88.1.
3. It is clear from the Opinion of then Deputy Commissioner Bost that significant future medical treatment was contemplated for plaintiff. However, the only medical service plaintiff received and for which defendants paid after April 30, 1997, was the evaluation done by Dr. Davis in April 1998. Once plaintiff was denied admission into Dr. Davis's program due to her uncontrolled high blood pressure, defendants could have authorized other treatment for plaintiff's compensable injuries but chose not to do so. Until 2004, the only treatment authorized for plaintiff by defendants related to this same program, in spite of the fact that plaintiff's blood pressure was never sufficiently controlled. The only treatment plaintiff received for her compensable injuries during this period was from Dr. Garrou, plaintiff's family doctor.
4. Plaintiff is entitled to payment of or reimbursement to her estate or Medicare as appropriate for treatment provided by Dr. Garrou as a result of plaintiff's compensable injuries as was reasonably required to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
5. It is clear that following April 30, 1997, plaintiff and defendants had widely divergent views on the course that plaintiff's treatment should take. Counsel for plaintiff did expend some time and effort to persuade defendants to authorize treatment with certain specialists. However, in spite of the substantial and long-standing differences among the parties regarding treatment approach, only in April, 2004, seven years later, did counsel for plaintiff file a motion with the Commission seeking to bring this matter to a resolution. It is noted that plaintiff was difficult to reach by telephone even when her attorney would try to contact her. Nevertheless, defendant's should have taken an aggressive position to get treatment for plaintiff which would not have been harmful to her high blood pressure. Such action might have included a motion to the Executive Secretary to have plaintiff comply with such proposed treatment or to seek guidance where a condition unrelated to plaintiff's compensable condition prevents certain treatment for plaintiff's compensable condition. It appears neither party was as attentive to these issues as they should have been. In its discretion the Full Commission determines that no imposition of penalties, sanctions, or award of attorney fees under N.C. Gen. Stat. § 97-88.1 to plaintiff or defendants is warranted.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for any treatment provided in the past to plaintiff by Dr. Garrou for compensable injuries which is currently unpaid and reimburse plaintiff's estate or Medicare as appropriate for such treatment that has already been paid for in accordance with Conclusion 4 above and N.C. Gen. Stat. § 97-25.
2. No award of attorney fees pursuant to N.C. Gen. Stat. §97-88.1 is made to plaintiff or defendants.
3. Defendants shall bear the costs.
This the 3rd day of April 2006
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ CHRISTOPER SCOTT COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER